UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| APRIL SMITH, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO: 4:07-CV-0082-AS |
| THE TJX COMPANIES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. No. 23) filed by Defendant The TJX Companies, Inc. ("Defendant" or "TJX") on Plaintiff April Smith's ("Ms. Smith") complaint filed on December 17, 2007. The complaint, in addition to making a claim for punitive damages, alleges retaliation for reporting sexual harassment activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*[1] The parties have fully briefed the issues and the Court heard oral argument on the motion in South Bend, Indiana on March 13, 2009. For the reasons discussed below, the Defendant's Motion for Summary Judgment is granted in part and denied in part.

## I. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, a court must view all

---

[1] Plaintiff's retaliation claim, alleged to have occurred in November 2005, was dismissed with prejudice (Doc. No. 22), but the retaliation claim which allegedly occurred around May 2006 is the subject of this motion.

facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex Corp.*, 477 at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.

## II. FACTUAL BACKGROUND

Ms. Smith began her employment with the Defendant on April 22, 1988, as a Merchandise Associate at the Lafayette, Indiana store. In 2003, Ms. Smith attained the position of Administrative Coordinator, and on April 12, 2004, Ms. Smith became the Assistant Store Manager of Operations.[2] Thereafter, on November 1, 2004, Heidi Crowell ("Crowell") became the Store Manager, and at all

---

[2] The management structure of Defendant's stores include two assistant managers, one of operations and one of merchandising, who report to a Store Manager. The Store Manager reports to a District Manager, and the District Manager reports to a Regional Manager. With respect to the two assistant managers of a store, they are considered distinct entities, but are both responsible for the store. However, the Store Manager retains ultimate responsibility as to the status and operation of a store.

relevant times, Emily Jarrett-Moore ("Jarrett-Moore") was the District Manager[3] over the Lafayette, Indiana store. Jarrett-Moore reported to Denise Adams, the Regional Vice-President. Also, Marion Brown held the position of Regional Manager of Human Resources.

In April 2005, Ms. Smith received a performance evaluation concerning her first ten months as an Assistant Store Manager of Operations, wherein she received an overall performance rating of 52. (A score of 52-67 "meet[s] expectations" and a score between 36-51 falls into a "Clear Development Needs" category). The evaluation noted Ms. Smith's performance issues. (Smith Depo., Exb. 14).

The same month, Donna Iaonne ("Iaonne"), the Regional Presentation Manager responsible for making sure merchandise was properly presented in stores, visited the Lafayette, Indiana store to conduct a walkthrough review.[4] Ms. Smith asserts that the walkthrough started off hostile, and turned into outward sexual advances towards Ms. Smith. As soon as Iaonne walked into the store, she said "what the fuck!" After criticizing the store presentation in less than professional terms, Iaonne attempted to invite Ms. Smith to lunch, but Crowell went along too. Upon first arriving at

---

[3]   In general, the District Manager (in this case Jarrett-Moore) has tremendous influence over who becomes the next Store Manager, even though TJX claims that the Regional Vice President and Regional Manager of Human Resources interview and make the final employment decision. In addition to initially deciding which candidates to interview for Store Manager, Jarrett-Moore conducted pre-candidacy and post-candidacy interviews before permitting the candidate to move to the next step in hiring. (Jarrett-Moore Decl., ¶¶ 4, 5). Further, in Jarrett-Moore's tenure as District Manager with TJX, a candidate has always first interviewed and obtained the recommendation of Jarrett-Moore before interviewing at the next step, and every time Jarrett-Moore recommended an individual for Store Manager, that person received the position. (Jarrett-Moore Depo., pp. 14-16). Moreover, the previous Store Manager (whose vacancy is being filled) does not have the power to make someone a candidate for interviewing. *Id.* at 11-12.

[4]   During the time of this walkthrough, Sheila Carr (claimed by Ms. Smith to be a similarly situated employee) was not yet hired as an employee with the Defendant.

another store before lunch, Iaonne turned to Ms. Smith and said, "[t]his is the kind of stuff I like in my store, baby" and winked. (Smith Depo., p. 121). When they left the store to eat, Iaonne positioned herself nose to nose with Ms. Smith and said, "[y]ou know what? I could eat anything, baby" as she winked at Ms. Smith and licked her lips. (Smith Depo., p. 121; Crowell Decl., ¶ 4). Before going to lunch, Crowell privately stated to Ms. Smith that Iaonne was out of her mind if she thought she could openly sexually harass her assistant manager. (Smith Depo., p. 122). At lunch, Iaonne openly talked about how she fired an assistant manager during a walkthrough presentation, but then told Ms. Smith how she could be a star within the company. Iaonne pressured Ms. Smith to order dessert while she performed "swirlies" on Ms. Smith's hand. (Smith Depo., p. 124). After lunch, Crowell encouraged Ms. Smith to report the incident of sexual harassment to Jarrett-Moore. (Crowell Decl., ¶ 6). However, because Ms. Smith was completely shocked from the walkthrough, intimidated by Iaonne, and scared to put her good standing with the Defendant in jeopardy, and because she needed time to mentally deal with the situation, Ms. Smith did not immediately report the incident to Jarrett-Moore.

It did not occur to Ms. Smith to report the incident until June 2005, when Randy Hoffman, another Store Manager for the Defendant, informed Ms. Smith of an unsettling experience he had with Iaonne involving sex toys and beaver clippers in the trunk of her car. (Smith Depo., pp. 126-27). After hearing this story and coming to terms with what occurred earlier in April, Ms. Smith reported the entire Iaonne incident to Jarrett-Moore on or about June 22, 2005. (Smith Depo., pp.128-29). During this conversation, Ms. Smith claims that Jarrett-Moore stated, in no particular words but in effect, "you don't really want to take this any further, you don't really want to report this." (Crowell Depo., pp. 19-20). Jarrett-Moore denies making the statement. Ms. Smith responded

that she did not want the situation escalated.

Per Defendant's written anti-harassment policies, Jarrett-Moore was required to immediately report Ms. Smith's complaint to the Regional Manager of Human Resources, Marion Brown. (Doc. No. 27-12, Plf's Exb. K). Jarrett-Moore did not report Ms. Smith's complaint to Human Resources on the day she received it, even though Crowell verified Ms. Smith's version of what occurred. When Crowell asked Jarrett-Moore whether she would report the complaint, Jarrett-Moore allegedly replied, "I'll take care of it," to which Crowell responded by saying "okay, but if it does not get done, I will report the incident." (Crowell Decl., ¶ 7; Crowell Depo., p. 69).

A few days later, not knowing what Jarrett-Moore had done with the complaint, Ms. Smith told Crowell that she really wanted her complaint reported to higher management. Crowell responded that she told Jarrett-Moore that the complaint needed to be reported. However, several days later, Crowell attended a District Manager meeting in Kokomo, Indiana, wherein she spoke with Jarrett-Moore about the Iaonne incident, and Jarrett-Moore allegedly expressed cynicism about the allegations, and asked Crowell if it really happened that way. (Crowell Decl., ¶ 8). Crowell passionately responded in the affirmative, and asked whether it had been reported, to which Jarrett-Moore said "I'm taking care of it, and it's not your job, it's mine." (Crowell Decl., ¶ 8; Crowell Depo., p. 70). In fact, Jarrett-Moore had yet to report the complaint.

Between June 22 and July 4, 2005, Crowell had numerous conversations with Jarrett-Moore wherein Crowell asked what was happening with the Iaonne incident report, and Jarrett-Moore simply repeated "I'm taking care of it." (Crowell Depo., pp. 17-18). Jarrett-Moore does not recall having these conversations. Because Jarrett-Moore did not report the complaint to Human Resources, Ms. Smith reported the incident to Brown and Adams sometime after July 4, 2005.

5

As part of her investigation, Brown conducted an interview of Crowell about the Iaonne incident. After the interview, Jarrett-Moore reportedly called Crowell and wanted to know what was said during the conversation and asked how Brown became involved. (Crowell Depo., p. 30). Crowell informed Jarrett-Moore that Ms. Smith reported the sexual harassment incident to Brown—upon which Jarrett-Moore stated, "[t]his is exactly what I'm talking about. April always steps outside the chains of command, and she will never go anywhere." *Id*. Jarrett-Moore testified that she never made the comment. (Jarrett-Moore Depo., p. 32). Jarrett-Moore was verbally counseled for failing to follow written policy and timely report Ms. Smith's complaint to Human Resources.

On July 5, 2005, Sheila Carr ("Ms. Carr") commenced her employment with the Defendant as the Assistant Manager of Merchandise for the Lafayette, Indiana store. In October 2005, Crowell voluntarily resigned from her position as Store Manager. Before leaving, Crowell informed Jarrett-Moore that Ms. Smith was one of the most electric and capable managers she had ever worked with, she demonstrated a daily dedication and loyalty to the company, and she was a very hard worker who excelled in customer service and always put the team first. (Crowell Decl., ¶ 13; Crowell Depo., pp. 74-75). Conversely, Crowell informed Jarrett-Moore that Ms. Carr harbored a negative attitude, demonstrated little desire to learn, had bad relations with her associates and peers, and was harsh, cold, and defensive to any advice or constructive criticism. (Crowell Decl., ¶ 14; Crowell Depo., p. 75). Upon her departure, Crowell stated that Ms. Smith would be ready for the Store Manager position "within" six (6) months, and Ms. Carr would be ready within eighteen (18) to twenty-four (24) months. Nevertheless, the vacant Store Manager position was filled by Brandon Wickersham.

After Crowell resigned and before Wickersham became Store Manager, the Lafayette store was subject to an audit that the store had not experienced in eight (8) years. The store failed the

audit, to which Ms. Smith and Ms. Carr took responsibility for since there was no Store Manager. Neither Ms. Smith nor Ms. Carr were formally disciplined as a result of the failed audit. (Jarrett-Moore Depo., p. 55).

During Wickersham's tenure as the Lafayette Store Manager from October of 2005 until April/May of 2006, Ms. Smith received a 2006 performance review score of 53 and Ms. Carr received a performance review score of 52. (Doc. No. 27, Exbs. I, J). Ms. Smith's performance review, prepared by Jarrett-Moore and Wickersham, again noted her "performance issues." (Smith Depo., Exb. 15). Ms. Smith admitted that she, the store employees, and the Store Managers, needed to improve in empowering associates and lowering employee attrition numbers which were worse in her second year as the Assistant Store Manager of Operations.

Wickersham decided to leave the Defendant's employ in April/May 2006. Concerned with his replacement, Wickersham stated to Jarrett-Moore that Ms. Smith would be ready within six (6) months to be Store Manager, and that Ms. Carr would not be ready until nine (9) months to a year.

Joyce Koepke, another Store Manager, stated that Ms. Smith was a very qualified, inspiring, knowledgeable person, with a strong work ethic and belief in helping the company. (Koepke Decl., ¶ 2). With respect to Ms. Carr, Koepke stated that Ms. Carr struggled with numbers, reports, and holding her store associates accountable, she appeared unwilling to learn new ways of operation, and she needed help out of troublesome situations. (Koepke Decl., ¶ 3). Ms. Smith appeared to be the better candidate for the position of Store Manager.

Yet, Jarrett-Moore ignored Ms. Smith as a Store Manager candidate and instead interviewed and recommended Ms. Carr for the position. (Smith Depo., p. 157; Jarrett-Moore Depo., p. 36-37). Ms. Carr was the only candidate interviewed and she was the only candidate offered the position.

7

Jarrett-Moore claims that she did not consider Ms. Smith a candidate because in her opinion, Ms. Smith was not qualified for the Store Manager position, did not possess the requisite skills sets, and did not possess the requisite ability to succeed. Jarrett-Moore informed Ms. Smith that she was not ready to be a Store Manager and criticized many aspects of her work performance. Ms. Smith admitted that some of the issues mentioned by Jarrett-Moore, were also performance problems that were identified in her 2006 review.

Thus, Ms. Carr became the Store Manager, despite the fact that Ms. Smith had eighteen (18) years of experience working for TJX, and Ms. Carr only had approximately one (1) year of experience. Further, Ms. Smith had two (2) baccalaureate degrees from Purdue University, while Ms. Carr only had a high school diploma. And as mentioned, in 2005, Ms. Smith received a higher performance evaluation than Ms. Carr.

TJX asserts that Ms. Carr was better qualified than Ms. Smith because Ms. Carr had ten (10) years of management experience at the assistant manager level or higher with other employers. Specifically, Ms. Carr possessed several years of experience working as a Business Manager at Sam's Club, requiring great responsibility in terms of revenue and employee supervision. Ms. Carr never submitted a complaint of sexual harassment to Jarrett-Moore, and Jarrett-Moore was never disciplined for failing to report a sexual harassment complaint to Human Resources on behalf of Ms. Carr. (Jarrett-Moore Depo., pp. 56-57).

In July of 2006, Jarrett-Moore transferred Ms. Smith to the Kokomo, Indiana store, so she could train to become a Store Manager. (Smith Depo., p. 223). On March 9, 2007, Ms. Smith filed her Charge of Discrimination after being notified that she would not be transferred back to the Lafayette Store. In April 2007, Ms. Smith received an overall performance review score of 61, was

given positive feedback, and was recognized as a "very strong Assistant Manager." (Smith Depo., Exb. 17). In April 2008, Jarrett-Moore recommended Ms. Smith for the promotion to Store Manager, and she received the promotion.

Ms. Smith challenges TJX's failure to promote her to Store Manager in May 2006 as retaliation for reporting the sexual harassment incident with Iaonne in June 2005. Ms. Smith also asserts a claim for punitive damages.

### III. DISCUSSION

#### A. Title VII Retaliation Claim

Pursuant to Title VII, Ms. Smith claims that TJX retaliated against her for reporting the sexual harassment incident because she was not promoted to Store Manager in May 2006. Under Title VII it is "unlawful for any employer to discriminate against an employee for opposing a practice made unlawful by the Act." 42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation under the direct method of proof, a plaintiff must establish that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action subsequent to her participation; and (3) there was a causal link between the adverse action and the protected activity. *Metzger v. Illinois State Police,* 519 F.3d 677, 681 (7th Cir. 2008) (citing *Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th Cir.2007)); *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). In order to prove a causal link, "the plaintiff is required to show that the employer would not have taken the adverse action 'but for' the plaintiff's engagement in the protected activity." *McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996).

"[A]n employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII . . . ." *Racicot v. Wal-Mart Stores,*

9

*Inc.*, 414 F.3d 675, 678 (7th Cir. 2005). In this case, TJX argues that Ms. Smith did not engage in statutorily protected activity by complaining of the Iaonne incident, because Ms. Smith did not objectively and subjectively believe that she was opposing an unlawful practice since Ms. Smith knew that Iaonne was an "equal opportunity harasser." In other words, because Ms. Smith knew about Iaonne's sexual incidences with other male employees (i.e. Randy Hoffman), and because Ms. Smith believed that Iaonne was bi-sexual, then it follows that Ms. Smith could not believe that she was sexually harassed. But, Defendant's analysis is flawed.

It is true that harassment based on one's sexual preference or orientation, and not on one's sex, is not unlawful under Title VII. *See Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000). However, the harasser's sexual orientation (or Iaonne's suspected orientation) makes no difference. All that matters is that Ms. Smith had a reasonable belief that she was harassed because of *her sex*, and not because of Ms. Smith's sexuality. Here, a reasonable jury could conclude that Iaonne's conduct was based on Ms. Smith's being a female. Additionally, the few details concerning Iaonne's incident with Randy Hoffman, does not allow a conclusion at the summary judgment stage that Iaonne treated (harassed) men and women equally.

Iaonne's conduct, inferring her ability to fire assistant managers, then calling Ms. Smith "baby," invading her personal space by getting nose to nose with Ms. Smith and stating that she could "eat anything, baby," winking and licking her lips, and inappropriately touching Ms. Smith's hand while pressuring her to order dessert, was enough for Ms. Smith to believe that the conduct, which she later opposed and followed-up on, violated Title VII. *See*, *Tate v. Executive Management Services, Inc*. 546 F.3d 528, 532 (7th Cir. 2008) (a plaintiff need not prevail on her Title VII discrimination claim or have opposed an action that in fact violated Title VII to win a retaliation

10

claim). As such, the Court finds that for the purposes of summary judgment, Ms. Smith reasonably believed in good faith that she engaged in statutorily protected activity, when she reported the incident to Jarrett-Moore on or about June 22, 2005, and thereafter to Denise Adams and Marion Brown in Human Resources.

Second, it is undisputed that Ms. Smith suffered an adverse employment action when she was not promoted in May 2006. *See Bell v. E.P.A.,* 232 F.3d 546, 555 (7th Cir. 2000) (for an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, or failing to promote).

Third, the timing of the May 2006 failure to promote and the June 2005 report of sexual harassment (almost one year), does not necessarily amount to timing which is suspicious enough to establish a causal link—even though Ms. Smith was actually first denied the promotion to Store Manager in November 2005, only six months after reporting the sexual harassment incident. At any rate, there is more in the record that satisfies the causal-connection.

Although Jarrett-Moore testified that she never "suggested" that Ms. Smith should not further report the sexual harassment incident, Crowell contends that Jarrett-Moore expressed cynicism about Ms. Smith's allegations and wanted to know if the incident really occurred. Further, despite Crowell's affirmation of the events, Jarrett-Moore did not report the incident to Human Resources. After finding out that Ms. Smith reported the incident to Denise Adams and Marion Brown, Jarrett-Moore reportedly stated, "[t]his is exactly what I'm talking about. April always steps outside the changes of command, *and she will never go anywhere*." (Crowell Depo., p. 30) (emphasis added).

These facts, taken as true, allow the Court to infer that Ms. Smith did not get promoted because as promised by Jarrett-Moore, she would not go anywhere in the company because she

reported the sexual harassment to Human Resources. Importantly, there is no doubt that Jarrett-Moore has substantial influence over who got interviewed and ultimately recommended for the position of Store Manager— and any one ever recommended by Jarrett-Moore, got the job. *See*, *Brewer v. Board of Trustees of University of IL,* 479 F.3d 908, 917-18 (7th Cir. 2007) (for a non-decision-maker's influence to put an employer in violation of Title VII, the employee must possess so much influence as to basically be the true "functional[ ] ... decision-maker" or the functional decision-maker's "cat's paw") (citing *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004); *Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir. 1990)). A good example of such a degree of influence (and one which offers a revealing comparison to the present case) is where the party nominally responsible for a decision is, by virtue of her role in the company, totally dependent on another employee to supply the information on which to base that decision. *Brewer*, 479 F.3d 908, 918 (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1147 (7th Cir. 1993); *David v. Caterpillar, Inc.*, 324 F.3d 851, 861 (7th Cir. 2003) (holding that liability can be based on the bias of employees who have the duty to recommend other employees for promotion, where the decision-maker received the necessary information for decisions from those recommending employees)). Here, Store Managers were only hired after Jarrett-Moore interviewed and recommended the employee for the position.

Here, if the Court were to believe Ms. Smith's version of the facts, then Jarrett-Moore's statement that Ms. Smith will never go anywhere, proves the fact in question that Ms. Smith did not get promoted because she reported the sexual harassment incident to Human Resources. Such an admission is enough to deny summary judgment. *See*, *Argyropoulos v. City of Alton,* 539 F.3d 724, 733 (7th Cir. 2008) (evidence of retaliation is 'direct' when, if believed, it would prove the fact in question without reliance on inference or presumption) (citing *Mannie v. Potter*, 394 F.3d 977, 983

(7th Cir. 2005)).

Ms. Smith can also establish a *prima facie* case of retaliation by showing that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; (3) she met her employer's legitimate expectations; and (4) she was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Metzger,* 519 F.3d at 681 (citing *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 785 (7th Cir. 2007)). If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the employer to produce a non-discriminatory reason for its employment action. *Id.* If the employer meets its burden of production, the burden of proof then remains with the plaintiff to show that the employer's proffered reason is pretextual. *Id.*

Because the first two elements of proof are the same under the indirect and direct methods of proof, the above discussion is incorporated herein, and the Court looks to the third and fourth elements of the *prima facie* case. *See Argyropoulos,* 539 F.3d at 733. Ms. Smith has raised questions of material fact as to these issues. In so far as meeting TJX's legitimate expectations, while Ms. Smith did not receive the highest ratings on her performance evaluations and she was counseled about areas that she needed to improve in, she still received a rating that fell in the category of "meeting expectations." Furthermore, Sheila Carr, who received a lower April 2006 performance review score by one point, was promoted to Store Manager in May 2006 and Ms. Smith was not. As such, while Defendant contends Ms. Smith was not ready to become a Store Manger, she has met her burden at this stage indicating that she was performing adequately.

As to similarly situated employees, Ms. Smith identifies Ms. Carr for purposes of satisfying the fourth prong. The similarly situated inquiry is a flexible, common-sense comparison based on "substantial similarity" rather than a strict "one-to-one mapping between employees," but still

requires "enough common features between the individuals to allow [for] a meaningful comparison." *Argyropoulos,* 539 F.3d at 735 (citing *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *affirmed*, 128 S.Ct. 1951 (2008)). Both Ms. Smith and Ms. Carr were female Assistant Store Managers at TJX, reported to the same Store Manager (Crowell and then Brandon Wickersham) or to the District Manager (Jarrett-Moore), and were evaluated under and held to the same standards. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (a similarly situated employee must be "directly comparable in all material respects," such as, whether the employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them). Even though TJX contends that Ms. Carr is not similarly situated to Ms. Smith because Ms. Carr has greater management experience with a larger company, this fact would be for a jury to weigh and decide along with the others— because it is also true that Ms. Smith worked with TJX for approximately eighteen years, while Ms. Carr did not begin working for TJX until July 2005. It is undisputed that Ms. Carr never submitted a complaint of sexual harassment, yet Ms. Smith did. Accordingly, the *prima facie* case has been met here.

TJX's non-discriminatory reason for not promoting Ms. Smith to Store Manager in May 2006 is that Jarrett-Moore looked at all factors and did not consider Ms. Smith qualified for the Store Manager position, because she did not possess the requisite skills sets, and did not possess the requisite ability to succeed.

TJX's business decision not to promote Ms. Smith based on her qualifications and ability are seemingly legitimate. Yet, Ms. Smith has cast doubt on TJX's explanation not to promote her, when the record reflects that Ms. Smith was completely ignored by Jarrett-Moore, and the only candidate

14

interviewed was Ms. Carr.  In addition, Store Manager Joyce Koepke, and former Store Managers of Ms. Smith, Crowell and Wickersham, all gave positive references for Ms. Smith, and thought highly of Ms. Smith's ability to be a Store Manager sooner than Ms. Carr.  Only after filing her charge of discrimination in March 2007, did Ms. Smith receive a higher performance evaluation in April 2007; and only after filing a complaint in December 2007, did Ms. Smith receive a promotion to Store Manager in April 2008.  After asking whether TJX's explanation is "honestly believed," the Court finds that a reasonable fact finder would not be compelled to believe the explanation. *See Culver v. Gorman & Co.*, 416 F.3d 540, 547-48 (7th Cir. 2005).  Here, there is evidence of retaliation, as well as a dispute as to whether Ms. Smith was the more qualified candidate.  This Court concludes that the evidence, taken in the light most favorable to Ms. Smith, creates a triable issue of pretext.  Accordingly, TJX is not entitled to summary judgment.

**B.     Punitive Damages Claim**

Title VII permits recovery of punitive damages if the plaintiff demonstrates that the defendant engaged in a discriminatory practice "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1126 (7th Cir. 1996) (citing 42 U.S.C. § 1981a(b)(1)).  A plaintiff may recover punitive damages under Title VII if three requirements are satisfied.  Specifically, the plaintiff must establish that the employer "acted with knowledge that its actions may have violated federal law" and that "the employees who discriminated against him are managerial agents acting within the scope of their employment." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 482 (7th Cir. 2003) (quoting *Bruso v. United Airlines*, 239 F.3d 848, 857-58 (7th Cir.2001) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999))).  However, even if these two prongs are met, "the employer may avoid liability for punitive

damages if it can show that it engaged in good faith efforts to implement an antidiscrimination policy." *Id*.

Assuming Ms. Smith met the first two prongs, the undisputed facts of record show that TJX engaged in good faith efforts to implement an anti-discrimination, harassment, and retaliation policy. Not only did TJX have a formal written policy prohibiting the conduct complained of here, TJX engaged in good faith efforts at Title VII compliance after Ms. Smith reported her harassment claim to Human Resources pursuant to their policy. Specifically, TJX conducted a investigation into Ms. Smith's sexual-harassment complaint, including interviewing those involved, to which there is no evidence suggesting that this investigation was merely a sham. In fact, Ms. Smith acknowledged that Jarrett-Moore was verbally disciplined for not reporting the sexual harassment complaint. Jarrett-Moore was in the wrong, and TJX so handled the situation. Indeed, there is no evidence for a jury to infer that TJX engaged in a cover-up rather than a good faith investigation of Ms. Smith's complaint. Furthermore, after Human Resources handled Ms. Smith's complaint, Ms. Smith was given the opportunity to train for Store Manager in July of 2006. Even after she filed her EEOC charge in March 2007, she still received positive feedback and her highest performance evaluation score in April 2007. The following year, Jarrett-Moore recommended Ms. Smith for the Store Manager promotion, and she received it. Based on the foregoing, the claim for punitive damages is not appropriate for a jury determination, when as a matter of law, the claim is without merit.

### IV. CONCLUSION

Viewing the record in the light most favorable to the non-movant, Ms. Smith's claim for retaliation under Title VII is subject to determination by a jury. No subjective indifference as to TJX's civil obligations has been shown, and where TJX employed a good faith effort to comply with

16

Title VII, summary judgment is proper on Ms. Smith's claim for punitive damages.

Based on the foregoing, the Court **DENIES IN PART AND GRANTS IN PART** the Motion for Summary Judgment (Doc. No. 23), in that the Title VII retaliation claim survives summary judgment, but the claim for punitive damages is dismissed. Each party to bear its own costs.

**SO ORDERED.**

**DATED: March 31, 2009**

                                              /s/ ALLEN SHARP
                                       **ALLEN SHARP, JUDGE**
                                       **UNITED STATES DISTRICT COURT**